

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | |
| | ) | No. 35498-9-III |
| PAUL A. CARDWELL, | ) | (consolidated with |
| | ) | No. 35508-0-III) |
| Respondent, | ) | |
| | ) | |
| and | ) | UNPUBLISHED OPINION |
| | ) | |
| REGAN R. CARDWELL, | ) | |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Regan Cardwell persuaded a Grant County court commissioner that adequate cause existed for a hearing on her motion to modify a parenting plan, only to have the commissioner later vacate his finding of adequate cause based on more accurate information. Her motion for revision of the vacation order was denied. She appeals that denial as well as the superior court's order refusing to revise a commissioner ruling denying her request for appointment of a guardian ad litem (GAL). We find no error or abuse of discretion, affirm, and deny both parties' requests for an award of attorney fees.

FACTS AND PROCEDURAL BACKGROUND

When Regan and Paul Cardwell's marriage was dissolved in March 2013, the permanent parenting plan entered for their two daughters provided that the girls would reside with Paul[1] the majority of the time. They stay with Regan every other weekend. Provisions of the parenting plan allocate the girls' residential time during winter vacation, summer vacation, and other school breaks. All major decisions are made jointly.

Three and a half years later, in late October 2016, Regan moved the trial court for emergency temporary relief placing the girls with her full time, stating that Paul was about to be sentenced in Idaho on a plea of guilty to a felony charge of possessing marijuana and a misdemeanor paraphernalia charge. Regan simultaneously petitioned to modify the parenting plan and residential schedule, alleging that there had been a substantial change in circumstances in that Paul was "absent the majority of the time," "regularly engages in criminal activity," and that Paul's parents, who "are left to act as primary physical custodians . . . disparage me to the children." Clerk's Papers (CP) at 12-13. She recounted information on prior orders, charges, and in two cases, convictions, that she characterized as Paul's "significant criminal history." CP at 13.

Regan's proposed modification provided that the girls would live with her most of the time, with visitation every other weekend with Paul and shared holidays. Because she

---

[1] Given the common last name, we use the couple's first names for ease of reading. We intend no disrespect.

2

No. 35498-9-III (consol. with No. 35508-0-III)
*In re Marriage of Cardwell*

alleged that Paul's problems "may harm the children's best interests," her proposed plan required that he be evaluated for drug and alcohol abuse. CP at 17-18. The plan gave Regan the sole authority to make parenting decisions. Her petition was supported by her own declaration and eight others.

Paul opposed the motion with his own 17-page declaration that cast a very different light on most of the events identified by Regan's recount of his "significant criminal history"—a history in which she had included even violations of fishing regulations. He was particularly contrite about a 2014 DUI[2] arrest and conviction but pointed out that the children were not with him at the time of the offense conduct, he was fully compliant with the conditions of his sentence, and the conviction had been the basis for an earlier motion by Regan to modify the parenting plan that was denied. In addition to his own declaration, his opposition was supported by seven declarations of others.

An adequate cause hearing was held before the Grant County court commissioner on December 7, 2016. On February 3, 2017, the commissioner entered an order finding adequate cause to hold a full hearing on Regan's petition. Among other findings, the commissioner stated he was taking judicial notice of the Idaho judgment and sentence entered for Paul's conviction of marijuana and paraphernalia possession, under which "the father is susceptible to re-incarceration for up to 180 days at the discretion of the

---

[2] Driving while under the influence of intoxicants.

3

Idaho probation officer" and this fact "was one of the decisive factors in finding adequate cause." CP at 462.

The commissioner also found that "[a]ny conflicts between mother and the paternal grandparents are not relevant." *Id.* While making clear that "[a]ll facts not known to the court when the final parenting plan was entered on 3/15/2013 were considered," he did not identify any other facts as bearing on his finding of adequate cause. *Id.* The commissioner denied Regan's request that he appoint a GAL.

On April 27,[3] Regan filed a second motion for the court to appoint a GAL, in which she detailed additional events that she characterized as "a few of the many displays of Mr. Cardwell's bad behavior toward me, and abusive behavior, as well as signs of instability." CP at 470. The commissioner again denied the motion, finding no evidence of a risk or detrimental environment for the couple's children that would warrant appointing a GAL. The commissioner's order also denied Regan's motion that Paul be required to obtain a psychological evaluation. This time, Regan moved the superior court to revise the commissioner's denial of her motion for appointment of a GAL.

Regan's motion for revision was heard and denied by the superior court on June 2. In denying the motion, the court explained that the reason a court appoints a GAL is to

---

[3] This and all other procedural developments discussed in the balance of the opinion occurred in 2017.

serve as "the eyes and ears of the Court" when information is needed that the court cannot otherwise obtain. Report of Proceedings (RP) at 21. The court stated that it appointed GALs when their assistance was needed, identifying, as a "typical situation . . . where we have pro se litigants, and they are not getting the evidence out to the Court." RP at 22. The court characterized the Cardwells' case as "frankly . . . not the kind of case where I feel I need to have a guardian ad litem. . . . [T]his is the kind of case where there's been a lot of information already provided to the Court. And the nature of the information isn't so much of the kind that we really want to have a guardian ad litem. . . . [W]e're getting a lot of good information here through attorneys themselves and through the discovery process." RP at 23-24. In its written order denying the revision motion the court explicitly adopted the commissioner's findings. Among them was the commissioner's finding that "[t]here is no evidence before the court that raises concern that the children are in any danger or that the environment in the father's home is detrimental to the children that would provide a basis for appointment of a Guardian Ad Litem." CP at 540.

Regan filed an eight-page motion for reconsideration, once again laying out "[k]ey facts" about Paul's problems that she claimed "were not known for months or even years." CP at 623. The motion for reconsideration was denied.

In the meantime, after Regan had served discovery, Paul filed a motion for a protective order. On July 21, the commissioner heard the motion. By then, materials had

5

been filed that made clear that Paul's Idaho sentence had been transferred and deferred or supplanted by a probationary program in Washington State, and that no jail time was imposed.

During the course of the hearing on the protective order motion, when Regan's lawyer attributed the commissioner's earlier finding of adequate cause to Paul's many problems, the commissioner disagreed, stating that he found adequate cause only because "it looked imminent that Mr. Cardwell was going to spend six months in jail." RP at 35. When Regan's lawyer disagreed, the commissioner was insistent, stating, "That's why I made the decision. Believe me. . . . It was the only consideration . . . . I'm saying I made a finding that adequate cause, based on my understanding at that time that Mr. Cardwell was going to be imminently incarcerated for six months." RP at 35-36. In his letter ruling on the motion, the commissioner commented that adequate cause for a hearing on Regan's modification petition may no longer exist.

On August 11, Paul filed a motion under CR 60(b)(11) to vacate the commissioner's earlier finding of adequate cause, arguing that it was now clear that the basis for the finding did not exist. The commissioner heard argument of the motion on August 25 and granted it. His letter ruling stated that he was "now . . . persuaded that the father will not be incarcerated since his DOC[4] supervision has been transferred to the

---

[4] Department of Corrections.

6

State of Washington." CP at 793. Speaking to the application of CR 60(b)(11), the commissioner stated, "the Court found adequate cause based on its mistaken belief that incarceration was imminent. The Court so found based upon its reading of the Judgment and Sentence from the State of Idaho. It is obvious that the Court's interpretation was incorrect. This Court finds that CR 60(b)(11) can be used in this case as a basis to vacate the finding of adequate cause," adding that "[m]odifications to Parenting Plans are disfavored[ and t]here is a strong policy in favor of custodial continuity." CP at 794.

Regan moved the superior court to revise the commissioner's decision. The superior court heard argument of the motion on September 15 and denied it. It observed that Regan never sought revision of the order finding adequate cause and that the meaning of the order was a question of law for the court. It found that the commissioner's only basis for finding adequate cause was the potential imminent incarceration of Paul, a belief that proved to be mistaken. Given that the sole basis for the order was a mistake, the superior court found that the commissioner properly vacated the finding.

On September 25, Regan moved the superior court for reconsideration. On October 2, the superior court denied the motion without further argument or proceedings.

Regan appeals (1) the superior court's orders on her motions for revision and reconsideration of the commissioner's order denying her request for appointment of a guardian, and (2) the superior court's orders on her motion for revision and

7

reconsideration of the commissioner's order granting the motion to vacate the adequate cause finding.

ANALYSIS

Acts and proceedings of court commissioners are subject to revision by the superior court upon demand made by written motion, filed with the clerk of the superior court within 10 days. RCW 2.24.050. When an appeal is taken from an order denying revision of a court commissioner's decision, we review the superior court's decision, not the commissioner's. *Williams v. Williams*, 156 Wn. App. 22, 27, 232 P.3d 573 (2010). If the superior court simply denies the motion to revise the commissioner's findings or conclusions, we treat the court as having adopted the commissioner's findings, conclusions, and rulings as its own. *Grieco v. Wilson*, 144 Wn. App. 865, 877, 184 P.3d 668 (2008), *aff'd sub nom. In re Custody of E.A.T.W.*, 168 Wn.2d 335, 227 P.3d 1284 (2010).

Whether to grant a motion for reconsideration is a matter within the sound discretion of the trial court; this court will not reverse a trial court's ruling absent a showing of manifest abuse of discretion. *Wilcox v. Lexington Eye Inst*., 130 Wn. App. 234, 241, 122 P.3d 729 (2005).

*Denial of request for appointment of GAL*

RCW 26.09.220(1)(a) provides that a court "may" appoint a GAL to perform an investigation and report concerning parenting arrangements for a child. We review a trial

8

court's determination on whether a GAL is necessary for an abuse of discretion. *Wildermuth v. Wildermuth*, 14 Wn. App. 442, 446, 542 P.2d 463 (1975). A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. *In re Marriage of Littlefield*, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997). "An abuse of discretion occurs only when no reasonable judge would have reached the same conclusion." *State v. Johnson*, 125 Wn. App. 443, 460, 105 P.3d 85 (2005). As the superior court in this case explained in denying Regan's motion for revision, when the parties have developed and presented evidence on the factors relevant to the parenting decision, an investigation will not be needed. *See Wildermuth*, 14 Wn. App. at 446 (GAL can be needed where parties fail in their proof to adequately develop relevant evidence).

Regan does not assign error to the superior court's adopted finding that "[t]here is no evidence before the court that raises concern that the children are in any danger or that the environment in the father's home is detrimental to the children that would provide a basis for appointment of a Guardian Ad Litem." CP at 540. It is therefore a verity on appeal. *In re Estate of Jones*, 152 Wn.2d 1, 8, 93 P.3d 147 (2004).

Instead, Regan argues that it was an abuse of discretion not to appoint a GAL because "the father had been extremely secretive, and he is assisted by his parents in keeping information from the mother." Opening Br. of Appellant at 2-3. The mere allegation in a family law case that the opposing spouse is withholding information does

not require the court to appoint a GAL. It is for the trial court to assess the need for the GAL, and where a party appears to ask for a GAL as an aid to discovering facts, legitimate considerations for the court include whether the party requesting the GAL is represented by a lawyer, has already investigated matters herself or himself, and has been permitted to engage in discovery. All of those were the case here. Because the superior court's belief that no further investigation was needed was reasonable, no abuse of discretion is shown in its denial of the motions for revision and reconsideration.

*Order vacating adequate cause finding*

The procedural significance of the adequate cause finding where modification of a parenting plan is requested has been described by this court as follows:

> Parenting plan modifications require a two-step process set out in RCW 26.09.260 and .270. First, a party moving to modify a parenting plan must produce an affidavit showing adequate cause for modification before the court will permit a full hearing on the matter. RCW 26.09.270. "[T]he information considered in deciding whether a hearing is warranted should be something that was not considered in the original parenting plan." *In re Parentage of Jannot*, 110 Wn. App. 16, 25, 37 P.3d 1265 (2002), *aff'd*, 149 Wn.2d 123, 65 P.3d 664 (2003).
>
> If the moving party establishes adequate cause and the court holds a full hearing, the court may then modify the existing parenting plan if it finds that (1) a substantial change occurred in circumstances as they were previously known to the court, (2) the present arrangement is detrimental to the child's health, (3) modification is in the child's best interest, and (4) the change will be more helpful than harmful to the child. RCW 26.09.260(1), (2)(c).

*In re Marriage of Zigler & Sidwell*, 154 Wn. App. 803, 809, 226 P.3d 202 (2010) (alteration in original). "Custodial changes are viewed as highly disruptive to children,

10

and there is a strong presumption in favor of custodial continuity and against

modification." *In re Marriage of McDole*, 122 Wn.2d 604, 610, 859 P.2d 1239 (1993).

"The primary purpose of the threshold adequate cause requirement is to prevent a

useless hearing." *Grieco*, 144 Wn. App. at 875. For that reason, it was appropriate for

the commissioner to vacate the finding of adequate cause when he learned he was

mistaken as to the only basis for his finding. That was the obvious remedy by which to

prevent a useless hearing.[5]

Regan nonetheless argues that the wrong procedure was followed in the revision

proceeding because the superior court should have considered *all* the evidence she

originally offered in support of adequate cause, not just her contention that Paul was

subject to imminent incarceration. She fails to consider two things, the first being that all

of her other evidence offered to demonstrate that Paul presented a risk and detriment to

the children had already been found unpersuasive by the superior court. It was rejected in

connection with her motion for appointment of a GAL when the commissioner made and

---

[5] CR 60(b) and (c) were relied on by Paul in requesting that the finding of adequate cause be vacated, and were relied on by the court in vacating the finding. Regan does not challenge the application of the rules. While the commissioner's order making the finding of adequate cause was no longer subject to a motion for revision (the 10-day time frame for bringing such motions under RCW 2.24.050 had passed), that does not make it a final order within the meaning of CR 60(b). The finding seems more interlocutory than final. Either way, relief from the mistaken finding was available. A trial court's interlocutory order or ruling is subject to revision at any time before final judgment. *See State v. Kinard*, 39 Wn. App. 871, 873, 696 P.2d 603 (1985); *Alwood v. Aukeen Dist. Ct. Comm'r*, 94 Wn. App. 396, 400 & n.9, 973 P.2d 12 (1999).

the superior court adopted the finding, unchallenged on appeal, that there was no evidence raising concern that the couple's daughters were in any danger or that the environment in the father's home was detrimental to them.

She also fails to consider that in denying her motion for revision, the superior court construed the commissioner's February 3 order as finding adequate cause solely on the basis of Paul's imminent incarceration. If Regan thought the commissioner's finding should not be so narrowly based, she needed to move for revision in February. In August, when the sole basis for the adequate cause finding was determined not to exist, it was too late to complain to the superior court about the narrow basis for a finding made six months earlier. No error or abuse of discretion is shown in the superior court's denial of the revision and reconsideration motions.

*Attorney fees*

Both parties request an award of reasonable attorney fees under RAP 18.1. Paul argues that Regan's intransigence and the frivolous nature of her appeal support an award of his fees on appeal. RAP 18.9 authorizes this court to award sanctions against a party who uses the Rules of Appellate Procedure for the purposes of delay, files a frivolous appeal, or fails to comply with the rules.

An appeal is frivolous if we are convinced that it presents no debatable issues on which reasonable minds could differ and is so lacking in merit that there is no possibility of reversal. *In re Marriage of Foley*, 84 Wn. App. 839, 847, 930 P.2d 929 (1997). A

civil appellant has a right to appeal under RAP 2.2, and all doubts as to whether the appeal is frivolous should be resolved in favor of the appellant. *See Streater v. White*, 26 Wn. App. 430, 434-35, 613 P.2d 187 (1980). The commissioner's reversal of his finding of adequate cause was an unusual development. Under the circumstances, we do not find Regan's appeal to have been frivolous.

Regan also requests attorney fees on appeal but does not identify applicable law giving her the right to a fee award. Her request is also denied.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Fearing, J.

13